IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 22, 2015


**GUYOKA BONNER v. SGT. CAGLE, ET AL.**


**Appeal from the Circuit Court for Lake County**
**No. 14CV521     R. Lee Moore, Jr., Judge**

_____


**No. W2015-01609-COA-R3-CV – Filed January 7, 2016**
_____


An inmate sought a writ of certiorari challenging the decision of the prison disciplinary board, alleging both a violation of his due process rights and a violation of the Uniform Disciplinary Procedures. The trial court granted a motion for judgment on the pleadings based upon the Tennessee Supreme Court's holding in ***Willis v. Tennessee Department of Correction***, 113 S.W.3d 706 (Tenn. 2003). We affirm the dismissal of the inmate's due process claim but reverse the trial court's decision to grant the motion for judgment on the pleadings of the inmate's claim related to the alleged failure to comply with the Uniform Disciplinary Procedures. Affirmed in part, reversed in part, and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the Court, in which ARNOLD B. GOLDIN, and BRANDON O. GIBSON, JJ., joined.

Guyoka Bonner, Tiptonville, Tennessee, Pro Se

Jennifer L. Brenner, Nashville, Tennessee, for the appellee, Tennessee Department of Correction.


**OPINION**


**Background**

Petitioner/Appellant Guyoka Bonner is an inmate in the custody of the Tennessee Department of Correction ("TDOC"). On December 18, 2014, Mr. Bonner filed a petition for a writ of certiorari against Respondents/Appellees "Sgt. Cagle, et al."[1] ("Appellees") in the Lake County Circuit Court regarding prison disciplinary proceedings that were undertaken after a cell phone was found in his cell.

In his petition, Mr. Bonner alleged that his rights were violated when the disciplinary proceedings were held in his absence. The facts surrounding Mr. Bonner's allegations are taken from his petition and largely undisputed. On July 1, 2014, a search of Mr. Bonner's cell revealed a cellular phone hidden in a hole in the wall behind a mirror. Both Mr. Bonner and his cellmate were charged with possession of a cellular phone and destruction of property due to the hole in the cell wall. The disciplinary proceedings related to the possession of a cellular phone charge were continued several times, twice upon Mr. Bonner's request, and three times upon request of TDOC staff. Finally, the hearing was scheduled for August 6, 2014.

On that day, Mr. Bonner received a movement pass that allowed him to move about the prison in order to attend the disciplinary hearing and/or visit the law library. Mr. Bonner proceeded to the disciplinary hearing around 1:15, but after being informed by hearing officer Sergeant Cagle that the hearing would not commence until 2:00, Mr. Bonner left the part of the prison where the hearing was to take place to go the law library. After visiting the law library, Mr. Bonner returned to his cell to retrieve the documents needed for the hearing. According to Mr. Bonner, however, upon his arrival at his cell, an officer informed him that "movement had stopped" and that he would not be allowed to leave his cell without an escort. According to Mr. Bonner, no one was available to escort him to the disciplinary hearing, and he was not able to leave his cell until 2:30 when movement resumed. When he finally arrived at the hearing, it had already been conducted, and Mr. Bonner had been found guilty. Mr. Bonner received a punishment of segregation for ten days; cancellation of three months of visitation; package restriction for nine months; and a $4.00 fine. Mr. Bonner thereafter appealed to the warden and the TDOC Commissioner, but both appeals were denied.

On January 21, 2015, the Tennessee Attorney General, on behalf of Appellees, filed a notice that it would not oppose the petition for a writ of certiorari. Accordingly, on February 2, 2015, the trial court granted Mr. Bonner's petition for a writ of certiorari and ordered that the record regarding the disciplinary proceedings be filed with the court. The record was thereafter filed on February 25, 2015.

---

[1] The only respondents ever named in this case were "Sgt. Cagle, et al." It appears, however, that TDOC took responsibility for responding to the petition, as the Tennessee Attorney General appeared to defend in the trial court and on appeal.

On April 23, 2015, Appellees filed a brief opposing Mr. Bonner's request for relief. In their brief, Appellees asserted that Mr. Bonner failed to show that there was any violation of the Uniform Disciplinary Procedures (discussed in detail, *infra*) or that there was any substantial prejudice resulting from any slight deviation from the Uniform Disciplinary Procedures, as required for relief. At the request of the trial court, Appellees subsequently filed a motion for judgment on the record, in reliance on their previously filed brief. Mr. Bonner did not respond to Appellees' motion.

On July 13, 2015, the trial court entered an order dismissing Mr. Bonner's petition. According to the trial court:

> From a review of the TDOC file that was filed by certified record on February 25, 2015, it appears to the Court that the inmate's right to appear in person before the board or hearing officer may have been violated. The reason for failure of the inmate to be present for the hearing appears to be a question of fact. A certified record filed by TDOC seems to substantiate the claim of the petitioner that Policy No. 502.01 under Uniform Disciplinary Procedures may have been violated.
>
> The petitioner claims that his failure to be present for the hearing constitutes a violation of his constitutional right to due process. He requests that this Court reverse his conviction for possession of a cell phone and to dismiss the charge due to a violation of his due process rights. He cites the case of ***Willis v. TDOC***, 113 S.W.3d 706 (Tenn. 2003). He alleges in his petition that TDOC sentenced him to ten days in isolation; cancelled three months of visitation and nine months package restriction and a $4.00 fine. In reviewing the ***Willis*** case, cited above, it appears that Mr. Willis had certain tools which TDOC felt could be used for escape. He was punished by the disciplinary board with a thirty (30) day punitive segregation; involuntary administrative segregation and a $5.00 fine. He filed a petition for certiorari claiming violation of his due process rights. In ***Willis***, the court found that thirty (30) days of punitive segregation was not a dramatic departure from the basic conditions of the prisoner[']s determinate sentence and, therefore, the prisoner was not entitled to due process protection. The court also found that the de minimis nature of the fine makes it immune from procedural due process requirements. Although under a Motion for Judgment on the

3

record,[2] the Court must accept the petitioner's version as being true, the petitioner still does not state a claim upon which relief can be granted under a common-law Writ of Certiorari because the punishment alleged does not trigger due process rights as defined in the *Willis* case.

Mr. Bonner filed a timely notice of appeal.

## Issues Presented

As we perceive it, Mr. Bonner raises two issues in his brief to this Court:

1. Whether the trial court erred in dismissing his claim based upon a violation of his due process rights?
2. Whether the trial court erred in dismissing his claim based upon a violation of the Uniform Disciplinary Procedures?[3]
3.

## Standard of Review

Here, the trial court granted Appellees' motion for judgment on the pleadings. When reviewing orders granting a motion for judgment on the pleadings pursuant to Rule 12.03 of the Tennessee Rules of Civil Procedure,[4] we use the same standard of review we use to

---

[2] Although the trial court references a motion for judgment "on the record," by indicating that Mr. Bonner's allegations would be taken as true, it is clear that the trial court utilized the standard applicable for motions for judgment on the pleadings. *See* Tenn. R. Civ. 12.03 (discussed in detail, *infra*).

[3] The actual issue raised in Mr. Bonner's brief provides:

> THE CHANCERY COURT ERRED IN DISSMISSING WRIT OF CERTIORARI AFTER DISCIPLINARY BOARD DENIED THE APPELLANT OF THE MINIMUM REQUIREMENTS OF DUE PROCESS, AND ERRED IN DISSMISSING PETITION FOR FAILURE TO STATE A CLAIM AFTER PREVIOUSLY GRATED CERTIORARI REVIEW BASED ON THE MERITS, AND ERRED IN DISMISSING THE WRIT OF CERTIORARI AFTER APPELLANT DEMONSTRATED THAT THE DISCIPLINARY BOARD FAILED TO FOLLOW THEIR OWN UNIFORM DISCIPLINARY PROCEDURE.

[4] Rule 12.03 provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent

review orders granting a Rule 12.02(6) motion to dismiss for failure to state a claim. ***Young v. Barrow***, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citing ***Waller v. Bryan***, 16 S.W.3d 770, 773 (Tenn. Ct. App. 1999)). Accordingly, we must review the trial court's decision de novo without a presumption of correctness, ***Stein v. Davidson Hotel Co.***, 945 S.W.2d 714, 716 (Tenn. 1997), and we must construe the complaint liberally in favor of the non-moving party and take all the factual allegations in the complaint as true. ***Young***, 130 S.W.3d at 63. We should uphold granting the motion only when it appears that the plaintiff can prove no set of facts in support of a claim that will entitle him or her to relief. ***Id.***

## Analysis

As an initial matter, we note that Mr. Bonner is proceeding *pro se* in this appeal, as he did throughout the proceedings in the circuit court. "It is well settled that *pro se* litigants must comply with the same standards to which lawyers must adhere." ***Watson v. City of Jackson***, 448 S.W.3d 919, 926 (Tenn. Ct. App. 2014). As explained by this Court:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

***Jackson v. Lanphere***, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011) (quoting ***Hessmer v. Hessmer***, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)). Accordingly, we keep these rules in mind in considering this appeal.

## Due Process

Mr. Bonner first argues that his procedural due process rights were violated when he was deprived of an opportunity to be heard at the disciplinary proceeding, citing ***Wolff v. McDonnell***, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) (holding that inmates in prison disciplinary proceedings are entitled to advance written notice of the charges, written findings of fact, the right to call witnesses and present documentary evidence when not unduly hazardous); *but see* ***Sandin v. Conner***, 515 U.S. 472, 480, 115 S. Ct. 2293, 2298, 132 L. Ed. 2d 418 (1995) (holding that while ***Wolff*** applies in prison disciplinary proceedings where due process is implicated by the deprivation of a protected liberty or property interest,

---

to such a motion by Rule 56.

not all prison disciplinary punishments implicate due process, as "[t]he Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed'") (discussed *infra*). As the Tennessee Supreme Court explained in ***Heyne v. Metropolitan Nashville Board of Public Education***, 380 S.W.3d 715 (Tenn. 2012):

> When a person asserts a procedural due process claim, the court must first determine whether he or she has an interest entitled to due process protection. ***Board of Regents of State Colls. v. Roth***, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); ***Rowe v. Board of Educ. of City of Chattanooga***, 938 S.W.2d 351, 354 (Tenn. 1996). If the court determines that the person has an interest that is entitled to constitutional due process protection, then the court must determine "what process is due." ***Morrissey v. Brewer***, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *see also* ***Martin v. Sizemore***, 78 S.W.3d 249, 263 (Tenn. Ct. App. 2001). Once the court determines minimum procedural due process protections to which the person is entitled, the court must finally determine whether the challenged procedures satisfy these minimum requirements.

*Heyne*, 380 S.W.3d at 731.

Here, the trial court dismissed Mr. Bonner's petition after determining that Mr. Bonner's punishment did not constitute the deprivation of a liberty or property interest that would entitle him to due process protections, citing ***Willis v. Tennessee Department of Correction***, 113 S.W.3d 706 (Tenn. 2003). In ***Willis***, the petitioner inmate was found guilty of attempting escape, after pliers were found in his cell, and information was provided to that effect from a confidential informant. The petitioner was found guilty of the charged offense and received a thirty-day sentence of punitive segregation, involuntary administrative segregation, and a $5.00 fine. After exhausting his administrative appeals, the petitioner inmate filed a petition for a writ of certiorari, claiming that his due process rights were violated because he was not given adequate notice of the charges, he was not given access to exculpatory evidence, and the disciplinary board improperly relied upon the testimony of the confidential informant. *Id.* at 709. The trial court dismissed the petition and the Court of Appeals affirmed. *Id.* at 709–10.

The Tennessee Supreme Court granted permission to appeal, affirming in part and reversing in part. The ***Willis*** Court first considered the petitioner inmate's claim that his due process rights had been violated. As the Court explained:

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.4 Consequently, a claim of denial of due process must be analyzed with a two-part inquiry: (1) whether the interest involved can be defined as "life," "liberty" or "property" within the meaning of the Due Process Clause; and if so (2) what process is due in the circumstances. *See Bd. of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Rowe v. Bd. of Educ.*, 938 S.W.2d 351, 354 (Tenn.1996). Deprivation of an interest which is neither liberty nor property does not trigger the procedural safeguards of the Due Process Clause. *See Sandin* [*v. Conner*], 515 U.S. [472,] at 483–84, 115 S.Ct. 2293 [(1995)]; *Rowe*, 938 S.W.2d at 354.

The United States Supreme Court has addressed, on several occasions, the issue of when a prisoner is deemed to have been deprived of a liberty interest. In *Sandin*, the Court held that a liberty interest is not created unless the disciplinary restraints being imposed on a prisoner are atypical in comparison to the "ordinary incidents of prison life." *Sandin*, 515 U.S. at 483–84, 115 S.Ct. 2293. In that case, the Court held that thirty days of punitive segregation was not a dramatic departure from the basic conditions of the prisoner's indeterminate sentence, and therefore, the prisoner was not entitled to due process protection. *Sandin*, 515 U.S. at 486, 115 S.Ct. 2293.

*Willis*, 113 S.W.3d at 710–11. Based upon the foregoing, the *Willis* Court held that the inmate petitioner "was not deprived of a liberty interest when he was punished with punitive and administrative segregation." *Id.* at 711. Because there was no deprivation of a protected liberty interest, there could be no due process violation related to the procedure utilized in depriving the inmate petitioner of that interest.

The question remained, however, as to whether the $5.00 fine imposed upon the inmate petitioner deprived him of a property interest so as to implicate due process. The *Willis* Court concluded that it did not, explaining:

State prisoners in Tennessee have a property interest in the funds in their prison trust fund accounts. *Jeffries v. Tenn. Dep't of Corr.*, 108 S.W.3d 862, 872 (Tenn. Ct. App. 2002); *see*

7

*also **Hampton v. Hobbs**, 106 F.3d 1281, 1287 (6th Cir. 1997) (holding that prisoners have a protected interest in their money). It would follow, therefore, that the imposition of a monetary fine to be paid from that trust fund account would constitute a deprivation of a property interest. If a property interest has been implicated, we must then determine what process is due under the circumstances. The answer to that question is situational because due process is a flexible concept that calls for only those procedural protections that the particular situation demands. See **Mathews v. Eldridge**, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); **Wilson v. Wilson**, 984 S.W.2d 898, 902 (Tenn. 1998); **Phillips v. State Bd. of Regents of State Univ. & Cmty. Coll. Sys. of Tenn.**, 863 S.W.2d 45, 50 (Tenn. 1993).*

*Willis*, 113 S.W.3d at 711. The Court also recognized that "[t]he relative weight of a property or liberty interest is relevant to the extent of due process to which one is entitled." Thus, the Court concluded that "where the interest is truly de minimis, procedural rights can be dispensed with altogether." **Id.** at 712 (citing **Goss v. Lopez**, 419 U.S. 565, 576, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); **Carter v. Western Reserve Psychiatric Habilitation Ctr.**, 767 F.2d 270, 272 n. 1 (6th Cir. 1985)). In considering these rules, the *Willis* Court concluded that: "The government's interests, including fiscal and administrative burdens of providing additional process, outweigh the petitioner's interest in his five dollars. The de minimis nature of the fine makes it immune from procedural due process requirements." *Willis*, 113 S.W.3d at 712.[5]

Here, it appears that Mr. Bonner received comparatively no more punishment than that at issue in *Willis*. Accordingly, we must conclude that neither a property nor liberty interest was at stake so as to implicate due process protections. While the inmate in *Willis* received a $5.00 fine, Mr. Bonner's fine was only $4.00. In addition, while the inmate in *Willis* received thirty days of administrative segregation, Mr. Bonner only received ten days. The only significant difference between this case and *Willis* is the additional punishment of the cancellation of visitation and package restriction. In **Anglin v. Turner**, No. E2006-01764-COA-R3-CV, 2007 WL 914708 (Tenn. Ct. App. Mar. 28, 2007), however, this Court held that a ten day administrative segregation coupled with a six month visitor/package restriction was not sufficiently harsh to be "atypical" of or a "significant hardship . . . in relation to the

---

[5] In *dicta*, the *Willis* Court also noted that: "At the very least, the amount of the fine certainly does not warrant any more process than [the petitioner inmate] actually received." **Id.** at 712. There was no dispute that the petitioner inmate "received some process, in that he did receive a hearing and was allowed to testify on his own behalf." **Id**. at 712 n.5.

ordinary incidents of prison life." *Id.* at *3 (citing *Willis*, 113 S.W.3d at 712). In a similar case, this Court held that twelve months of package restriction and ten days of segregation were insufficient to constitute an "atypical" and "significant hardship" implicating due process protections. *Patterson v. Tennessee Dep't of Correction*, No. W2009-01733-COA-R3-CV, 2010 WL 1565535, at *3 (Tenn. Ct. App. Apr. 20, 2010). Based upon these cases, we must likewise conclude that three months of visitation cancellation and nine months of package restriction are not sufficient punishments to constitute "a dramatic departure from the basic conditions" of Mr. Bonner's sentence. Because Mr. Bonner was not deprived of either a protected property or liberty interest, due process was not implicated. The trial court's dismissal of Mr. Bonner's claim related to due process is, therefore, affirmed.

Unlike the trial court, however, we cannot conclude that this ends the inquiry into Mr. Bonner's writ of certiorari action. Indeed, as this Court explained:

> [E]ven if a state prisoner is not entitled to due process protections in a disciplinary proceeding, the inmate may nevertheless assert a claim under a common-law writ of certiorari that the prison disciplinary board otherwise acted illegally or arbitrarily in failing to follow TDOC's Uniform Disciplinary Procedures. *Irwin v. Tenn. Dep't of Corr.*, 244 S.W.3d 832, 835 (Tenn. Ct. App. Aug. 13, 2007) (citing *Willis*, 113 S.W.3d at 713).

*Patterson*, 2010 WL 1565535, at *2. Indeed in *Willis*, the very case relied upon by the trial court, the Tennessee Supreme Court did not dismiss the inmate petitioner's common law writ of certiorari, despite determining that no process was due. *See Willis*, 113 S.W.3d at 712–13. Instead, the *Willis* Court considered the inmate petitioner's claim that the Uniform Disciplinary Procedures were violated independent from his due process claim. *Id.* at 713. Here, Mr. Bonner's petition for a writ of certiorari clearly alleges that the disciplinary proceedings violated TDOC's Uniform Disciplinary Procedures in holding the hearing in his absence, as discussed in more detail, *infra*. The trial court therefore erred in failing to consider this claim independent of his due process claim. Accordingly, we will proceed to consider whether the trial court erred in granting Appellees' motion for judgment on the pleadings as to Mr. Bonner's common law writ of certiorari.

### Writ of Certiorari

The proper vehicle for challenging a prison disciplinary action is the common law writ of certiorari. *Rhoden v. State Dep't of Corr.*, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998). When the trial court granted the petition for writ of certiorari, it simply issued a command "to the inferior tribunal or administrative agency to send the record made before the agency in

the proceeding to the court for review. . . ." ***Gore v. Tenn. Dep't of Corr.***, 132 S.W.3d 369, 375 (Tenn. Ct. App. 2003). Once the administrative record has been filed, "the reviewing court may proceed to determine whether the petitioner is entitled to relief without any further motions, and if the court chooses, without a hearing." ***Jackson v. Tenn. Dep't of Corr.***, No. W2005-02240-COA-R3-CV, 2006 WL 1547859, at *3 (Tenn. Ct. App. June 8, 2006).

After a petition for the common law writ of certiorari is granted, the scope of judicial review is narrow:

> It covers only an inquiry into whether the Board has exceeded its jurisdiction or is acting illegally, fraudulently, or arbitrarily[.] Conclusory terms such as "arbitrary and capricious" will not entitle a petitioner to the writ. At the risk of oversimplification, one may say that it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision is reached. If the agency or board has reached its decision in a constitutional or lawful manner, then the decision would not be subject to judicial review.

***Powell v. Parole Eligibility Review Bd.***, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994) (internal citations omitted). Accordingly, "[a]bsent a showing of some illegality or arbitrariness in the proceedings, a dispute over the outcome of a prison disciplinary hearing does not state a claim for writ of certiorari." ***Brown v. Little***, 341 S.W.3d 275, 279 (Tenn. Ct. App. 2009) (quoting ***Meeks v. Traughber***, No. M2003-02077-COA-R3-CV, 2005 WL 280746, *3 (Tenn. Ct. App. Feb. 4, 2005)). The Tennessee Supreme Court has indicated that relief under a writ of certiorari may be authorized to remedy: "(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion." ***Willis***, 113 S.W.3d at 712 (citing ***State v. Willoughby***, 594 S.W.2d 388, 392 (Tenn. 1980)).

The allegations in this case concern a violation of the Uniform Disciplinary Procedures. The Uniform Disciplinary Procedures exist "[t]o provide for the fair and impartial determination and resolution of all disciplinary charges placed against inmates." TDOC Policy No. 502.01(II); ***Meeks v. Tenn. Dep't of Corr.***, No. M–2007–01116–COA–R3–CV, 2008 WL 2078054 at * 3 (Tenn. Ct. App. May, 15, 2008). Minor deviations from the procedures will not warrant dismissal of the disciplinary action unless the prisoner demonstrates "substantial prejudice as a result and the error would have affected the disposition of the case." TDOC Policy No. 502.01(V); ***Meeks***, at * 3. "To trigger judicial relief, a departure from the Uniform Disciplinary Procedures must effectively deny the prisoner a fair hearing." ***Jeffries v. Tenn. Dep't of Corr.***, 108 S.W.3d 862, 873 (Tenn. Ct.

App. 2002). Thus, an inmate may be entitled to relief under a common law writ of certiorari if he demonstrates that the disciplinary board failed to adhere to the Uniform Disciplinary Procedures and that its failure to do so resulted in substantial prejudice to the inmate. *Irwin v. Tenn. Dep't of Corr.*, 244 S.W.3d 832, 835 (Tenn. Ct. App. 2007).

In order to determine whether the trial court correctly granted Appellees' motion for judgment on the pleadings, we must consider whether Mr. Bonner's petition states a claim for relief. According to the Tennessee Supreme Court:

> A prisoner seeking judicial review of a prison disciplinary proceeding states a claim for relief under common-law writ of certiorari if the prisoner's complaint alleges facts demonstrating that the disciplinary board failed to follow the Uniform Disciplinary Procedures and this failure substantially prejudiced the petitioner. Thus, for [Mr. Bonner] to survive a motion to dismiss, his petition must allege that the disciplinary board followed an unlawful procedure and that he was substantially prejudiced thereby.

*Willis*, 113 S.W.3d at 713. Here, Mr. Bonner alleges that Appellees violated TDOC Policy 502.01 of the Uniform Disciplinary Procedures, which states in pertinent part:

> 2. The inmate who is charged with the rule infraction(s) shall have the right to appear in person before the board/hearing officer at all times, except:
>
> a. When the board/hearing officer is receiving testimony from a confidential source.
>
> b. During the board's deliberations or the hearing officer's review of the charge.
>
> c. If the inmate is disorderly (i.e., preventing the orderly conduct of the hearing). In such cases, the advisor may remain present on the inmate's behalf.
>
> d. When the inmate signs an agreement to plead guilty.

Based upon this rule, the trial court specifically found that a review of the "certified record filed by TDOC seems to substantiate the claim of the petitioner that [the] Uniform Disciplinary Procedures may have been violated."

We likewise conclude that Mr. Bonner's petition for a writ of certiorari, if taken as true, "alleges facts demonstrating that the disciplinary board failed to follow" Policy 502.01. *Willis*, 113 S.W.3d at 713. Here, Mr. Bonner clearly alleges that, without any of the above exceptions being present, he was prevented from attending the disciplinary proceedings, despite the fact that the hearing officer knew of his intention to appear. By the use of the word "shall" and the indication that the rule shall apply "at all times," Policy 502.01 indicates that its directive is mandatory, rather than discretionary. *State v. Haddon*, 109 S.W.3d 382, 386 (Tenn. Crim. App. 2002) ("It is correct that when the word "shall" appears in a statute, it is ordinarily construed as being mandatory and not discretionary.") (citing *Stubbs v. State*, 216 Tenn. 567, 393 S.W.2d 150 (1965)).

Appellees contend, however, that the disciplinary hearing officer was entitled to hold the hearing in Mr. Bonner's absence because he voluntarily chose not to appear at the appointed time. This fact, Appellees argue, shows that Mr. Bonner was "disorderly" and, therefore, not entitled to attend the hearing. As previously discussed, however, in reviewing a trial court's decision to grant a motion for judgment on the pleadings, we must take the allegations in the petition as true. *Young*, 130 S.W.3d at 63. Mr. Bonner alleges in his petition that it was not his choice to arrive late for the hearing, but instead he was prevented from attending when prison officials suspended movement in the prison. In our view, this allegation is sufficient to survive the motion for judgment on the pleadings on the issue of whether a violation of the Uniform Disciplinary Procedures occurred.

We next consider whether Mr. Bonner "alleges facts demonstrating that the . . . failure [to comply with the Uniform Disciplinary Procedures] substantially prejudiced" him. *Willis*, 113 S.W.3d at 713. We conclude that he has. In his petition, Mr. Bonner alleges that by holding the hearing in his absence, Mr. Bonner "was not present to see and [hear] evidence, testify in his own behalf, or face his accuser." Appellees cite no cases, nor has our research revealed any, where this Court or the Tennessee Supreme Court has held that no prejudice results from a disciplinary proceeding that is held in the absence of the accused inmate.

Here, Mr. Bonner clearly alleges that he was prejudiced in being prevented from testifying in his own defense and facing his accuser, which may have affected the outcome of his case. According to the record from the disciplinary proceedings, the officer that testified regarding the search of Mr. Bonner's and his cellmate's cell admitted that of the two inmates, he "ha[d] no idea who the phone belonged to." It is certainly conceivable that Mr. Bonner's testimony may have shed light on this issue. "[T]he threshold for surviving a motion to dismiss for failure to state a claim upon which relief can be granted is 'generally low.'" *Moses v. Dirghangi*, 430 S.W.3d 371, 378 (Tenn. Ct. App. 2013), *perm. app. denied* (Feb. 11, 2014) (quoting *Steele v. Ritz*, No. W2008-02125-COA-R3-CV, 2009 WL 4825183, at *4 (Tenn. Ct. App. Dec. 16, 2009) (describing the requirements as "minimal"). A petitioner is not required to prove his case at the motion to dismiss stage. *See **Cook By & Through***

*Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994) (noting that a "motion to dismiss for failure to state a claim upon which relief can be granted tests only the sufficiency of the complaint, not the strength of a plaintiff's proof") (citing *Merriman v. Smith*, 599 S.W.2d 548, 560 (Tenn. Ct. App. 1979)). Instead, "courts should construe the complaint liberally in favor of the plaintiff," and should only grant a motion for judgment on the pleadings if "the allegations contained in the complaint, considered alone and taken as true, are insufficient to state a claim as a matter of law." *Cook*, 878 S.W.2d at 938) (citing *Fuerst v. Methodist Hospital South*, 566 S.W.2d 847, 848–49 (Tenn. 1978); *Cornpropst v. Sloan*, 528 S.W.2d 188, 190 (Tenn. 1975)). Assuming the facts alleged in the petition are true, as we must at this stage, we conclude that Mr. Bonner alleged sufficient facts in his petition to survive a motion for judgment on the pleadings. The trial court's decision to grant Appellees' motion for judgment on the pleadings is, therefore, reversed.

## Conclusion

The judgment of the Circuit Court of Lake County is affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion, including, if necessary, an evidentiary hearing on Mr. Bonner's writ of certiorari.[6] Costs of this appeal are taxed to Appellees, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

[6] We note that an evidentiary hearing may be necessary, as the trial court noted that there was a "question of fact" regarding some of Mr. Bonner's allegations.

13